```
                   UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - X
UNITED STATES OF AMERICA      :    00-CR-943 (DRH)

     -against-                     U.S. Courthouse
                              :
                                   Central Islip, New York
WALTER SORNOZA

               Defendant      :
                                   March 11, 2015
- - - - - - - - - - - - - - - - X  10:00 a.m.


BEFORE:
         HONORABLE DENIS R. HURLEY
               United States District Judge



APPEARANCES:

For the Government:      LORETTA E. LYNCH
                         United States Attorney
                         271 Cadman Plaza East
                         Brooklyn, New York 11201
                         BY:  JAMES M. MISKIEWICZ
                              Assistant U.S. Attorney


For the Defendant:       LaRUSSO & CONWAY, LLP
                         145 Willis Avenue
                         Mineola, New York 11501
                         BY:  JOSEPH CONWAY



U.S. Probation Officer:  ROBBIE PATUS


Court Reporter:          RONALD E. TOLKIN, RPR, RMR, CRR
                         100 Federal Plaza
                         Central Islip, New York 11722
                         631-712-6105
                         ronald_tolkin@nyed.uscourts.gov
```

1  THE CLERK: Calling case 00-CR-943, U.S.A. versus
2  Walter Sornoza.
3  Counsel, please state your appearances for the
4  record.
5  MR. MISKIEWICZ: Good morning, Your Honor.
6  James Miskiewicz for the United States. With me is
7  U.S. Probation Officer Robbie Patus.
8  PROBATION OFFICER: Good morning, Judge.
9  THE COURT: Good morning, gentlemen.
10  MR. CONWAY: Good morning, Your Honor.
11  Joseph Conway on behalf of Walter Sornoza.
12  THE COURT: Good morning, Mr. Conway; and good
13  morning, Mr. Sornoza.
14  THE DEFENDANT: Good morning, Your Honor.
15  THE COURT: This matter is on as a result of a
16  violation of supervised release. There were two charges
17  filed. The defendant pled or acknowledged that he violated
18  it. The allegation in charge one and two are established. I
19  have a few preliminary questions.
20  One is that Mr. Conway has submitted a very
21  professionally crafted brief on behalf of his client. It is a
22  letter brief. It is dated March 4th, 2015. It indicate, as a
23  result of his activities while on supervised release he was
24  arrested by state authorities. On page two of the letter
25  brief, dated March 4th, 2015, there is an indication that he

RONALD E. TOLKIN, RPR, RMR, CRR
OFFICIAL COURT REPORTER

pled guilty to a felony which is conditioned upon successful cooperation. Which apparently he furnished in the State, that the felony conviction would be vacated, and he agreed to plead to a misdemeanor offense.

Mr. Conway, what happened with respect to that?

MR. CONWAY: Your Honor, I did represent him in the underlying State case. I can tell you that immediately upon his arrest he agreed to cooperate with the state authorities. He proffered and he entered into a cooperation agreement.

The agreement stated that he was to plead guilty and did plead guilty to a felony offense and a misdemeanor offense. He pled to two counts. In State Court they call it a conditional plea. Whereas at sentencing upon successful completion of the cooperation which to date he has done -- well, there still could be more as there may be a trial with respect to matter. If he successfully cooperates the felony will be dismissed and he would be sentenced on the misdemeanor offense.

THE COURT: So he actually hasn't been sentenced on the State matter because the cooperation is still ongoing?

MR. CONWAY: Correct, Judge. There are a couple of defendants that have not pled. There is no trial date set. We are not sure if a trial will be had. Some say, yes, and some said, no. If a trial is to be had he would be a trial witness and would be prepared to testify.

1 THE COURT: Very good. Thank you, Mr. Conway.

2 Mr. Miskiewicz, is the government ready to proceed?

3 MR. MISKIEWICZ: We are, Your Honor.

4 THE COURT: Mr. Conway, you are as well?

5 MR. CONWAY: Yes, Your Honor.

6 THE COURT: Mr. Sornoza, are you ready to proceed?

7 THE DEFENDANT: Yes, Your Honor.

8 THE COURT: You were represented in this matter as
9 well as in the State matter by Mr. Conway. Are you satisfied
10 with the legal representation he has provided to you?

11 THE DEFENDANT: Yes, Your Honor.

12 THE COURT: What position does the government take
13 on this matter? I have read the violation of supervised
14 release report. I am aware that the recommendation of
15 Probation is that he be incarcerated for a period of sixty
16 months and that would conclude the matter. There would be no
17 supervised release thereafter.

18 MR. MISKIEWICZ: We join in the recommendation of
19 Probation. We are in accord with that, Your Honor.

20 THE COURT: Thank you, Mr. Miskiewicz.

21 Mr. Conway, as I said, I read what you submitted as
22 well as the attached letters. I will hear you if you there is
23 anything that you would like to underscore for me or anything
24 that you would like to say on behalf of your client.

25 MR. CONWAY: Yes, Your Honor. I will be brief. I

1 don't want to repeat what you have already read.  I appreciate
2 you reading that.  I will stand here, Your Honor, so I don't
3 have to really raise my voice as I am battling a little bit of
4 laryngitis in the cold weather.
5       Background wise, Judge, just so you understand the
6 full history here.  Mr. Sornoza was originally arrested in
7 March of 2003.  It was 12 years ago.  He ended up pleading
8 guilty to Your Honor.  Your Honor sentenced him to a term of
9 imprisonment of 77 months coupled with a five year supervised
10 release term.
11       Unfortunately, when he was released from prison he
12 was just about a week shy or maybe two weeks shy of finishing
13 the five years of supervised release when he was arrested by
14 the state authorities.  That doesn't make it any better but he
15 was that close to being finished.
16       I understand Probation's recommendation.  Obviously,
17 I disagree with it.  I think it is too harsh especially
18 considering that it is premised upon the State Court Judge,
19 which in all likelihood will end up probably giving no jail
20 time for Mr. Sornoza if he successfully continues to give his
21 cooperation.
22       I think a lot of what is in the Pretrial or the
23 Probation recommendation stems back from what I will call a
24 spotty five years on supervised release because there were a
25 couple of incidents in which he received modifications from

1  the Court. I am not downplaying that. Anybody on supervised
2  release should have no blemishes. I don't want to downplay
3  it. They were not for criminal actions. He left to go to
4  Florida to see a family member without telling Mr. Patus, and
5  he drove on a suspended license. He was aware at the time it
6  was suspended. His modifications were based on that. All of
7  the modifications resulted in either a home arrest or a small
8  period of community confinement.
9         As I said, he was literally weeks away from
10 completing the five years of supervised release when this
11 charge came. So I think it is unwarranted and unreasonable to
12 ask for a full five year term, although I know legally you can
13 do so, given the fact that we are standing here on a violation
14 for something that he did in 2003, and almost completed five
15 years of supervised release and 77 months in prison.
16        Currently, Judge, Walter sits in front of you, he
17 has been married for the last seven years. His wife wrote you
18 a letter. His wife is here in Court today. They had a child
19 together who is approximately three or four years old. He is
20 in Court today. She also had a daughter from a previous
21 relationship, who is eight years old. She wrote you a letter
22 as well. She considers Walter her father. He essentially
23 raised her for the last seven years. He also has a son who is
24 17 that he has custody of. He has custody from the first
25 wife. They obviously are no longer together. He has custody.

He is a good student. He also wrote you a letter. Lastly, he has a fourth child, Judge, who is in the custody of his mother in Florida and is 12 years old. He also helps to provide support for them. He has a wife and four children that he is supporting.

Most importantly, Judge, he has been employed for quite sometime now. Where he is the co-owner of a place called Best Buy Auto Dealers. It is a real business. It is located in Woodside, Queens. Unfortunately, I think what led Walter into this current predicament is that the business was not doing that good. He tried to supplant his income with the marijuana dealing. The business is now doing well. He works six days a week for 12 hours a day. In fact, Judge, he is hoping and his partner is hoping to extend the business to Empire Two. That is something that is going to be in the works down the road. The business has filed their tax returns. He has filed his own tax returns. The business is doing well.

So what basically, Judge, he is somebody who has paid for his first crime. Obviously, he made a huge mistake by being involved in the second crime. He tried to do everything he can to help the state authorities and he, obviously, tried to help himself. Who sits here now, albeit with a checkered past. But he has three kids he supports, 17, 8 and 3. He has a wife who also works a little bit, but she

1  can't do it alone.  He does have the support of his mother and
2  the other family members, as you can see.  His mother wrote
3  you a letter.  She is in Court today, as well.  If he is
4  incarcerated for a lengthy period of time the business will
5  obviously suffer and maybe fail, and when he comes out he
6  might not have a business to go back to.
7         So what I am asking you, Judge, is to see if there
8  is somehow a way to craft a sentence that punishes him but
9  doesn't punish the business and his family.  How I would
10 propose to do that is that he be put for a period of time in
11 the community center and for a period of time be on house
12 arrest.  It will punish him because he will be away from his
13 family, but it is something he can go out in the day and
14 support his family so they can reap the benefits of his work.
15         It is hard to ask for a second chance for someone
16 who has already had a few.  But I am thinking that if he is
17 put in a community center where he can work and he is on house
18 arrest, where all he can do is basically be with his family
19 and at work.  That may be a situation that will serve both
20 ends of justice.  That will help him economically and help his
21 family economically.  At the same time he will be serving
22 sometime of imprisonment and be away from his family.  That is
23 a question that the Court can consider.
24         Thank you.
25         THE COURT:  Mr. Conway, thank you, sir.

1  Before I hear from Mr. Sornoza, I note that on page
2  four of the October 1st, 2013 violation of supervised release
3  report the following language appears.  This is based on
4  information we received from a detective with the Suffolk
5  County Police Department, as indicated on the last full
6  paragraph on that page.  Supposedly during a fairly extended
7  period of time, lasting several months, that Mr. Sornoza was
8  supposedly selling somewhere in the neighborhood of 150 pounds
9  of marijuana in a week.  I don't know -- and that is indirect
10 information.  It sounds like he, basically what he did, he was
11 a drug dealer.  That is how he ended up getting 77 months of
12 incarceration.  It sounds like he placed his new business and
13 his family in jeopardy by getting involved in significant drug
14 dealing again.
15  Is there anything to indicate that that is not the
16 case?  He already pled guilty.  Maybe it is a belated
17 question.  You know, if he was caught in possession of
18 marijuana or he made a combination sale to somebody, I would
19 think that your argument and, again, you are an excellent
20 lawyer and you do a good job for Mr. Sornoza.  I might buy
21 that but he has a criminal history category of six.  He was a
22 major drug dealer early on.  That is what brought him before
23 me some years ago now.  It looks like he is, to a lesser
24 extent, but he is following the same path.
25  Why do you feel that is an inappropriate analysis if

1  you think it is?

2           MR. CONWAY:  I understand the Court's analysis and I

3  am not saying it is inappropriate, Judge, I am just indicating

4  the facts.  There is no question that in his past he dealt

5  drugs.  Your Honor sentenced him to 77 months.  I am not

6  downplaying that.  There were others in that case that were a

7  little bit more culpable than him.

8           THE COURT:  He was major player.

9           MR. CONWAY:  Exactly, there is no denying it.

10          In this particular case, Judge, we are dealing with

11 a relatively short timeframe.  It was about eight or nine

12 weeks.  I think that is what we had discussed with the Suffolk

13 DA.  This is not a case where it was just him.  There were

14 over 20 defendants in that case that were indicted in Suffolk

15 County.  It was a large group, and it was a large conspiracy

16 with a group here and there.  We are not denying for a minute

17 that he was dealing in drugs for that relatively short period

18 of time.  And stupidly because his business was not doing well

19 that is how he felt he could supplement his money, and that is

20 not an excuse.  It was not strictly him.  It was over 20

21 defendants who mostly pled guilty now.  I think the cumulative

22 effect was about 150 pounds.

23          I think it turns out, Judge, my recollection, and

24 not that it makes a bib difference, but about every ten days

25 given the timeframe that we are talking about there was about

1  four or maybe five times that this occurred.  Obviously that
2  is a crime.  There is no getting around that.  We are not
3  backtracking from that.  We pled guilty to it.  He is trying
4  to cooperate in Suffolk.  Yes, this is not his first go
5  around.  He is a major drug dealer.  It was a short-lived
6  stupid activity he wishes he didn't get involved in and
7  unfortunately he did.
8           Since then, which is August of 2013, by my math is
9  20 months or 21 months ago, he has been good.  He wasn't
10 really supervised, Judge, since his supervised release term
11 was technically over.  He has been on his own and he checks in
12 every day or every other day with Suffolk.  He dedicated
13 himself to the business where he works six days a week with 12
14 hours a day.
15          Yes, we can't get away from his past, Judge.  But if
16 you put it in context with everything else I think it does
17 give the Court a better indication of who he is.
18          THE COURT:  Thank you.
19          That is what troubled me with the 150 pounds of
20 marijuana for a week.  That was the end result of a concerted
21 effort by a number of individuals, somewhere in the
22 neighborhood of 20, rather than Mr. Sornoza alone.
23          Mr. Sornoza, you have a right to be heard before the
24 sentence is imposed.
25          What would you like to say on your behalf?

1          THE DEFENDANT:  Judge --

2          THE COURT:  You can be seated, sir.

3          The main thing is to make sure that I can hear you.

4          THE DEFENDANT:  Judge Hurley, I have nothing to say.

5     I have a horrible past.  I did plenty of bad things.  I also

6     done good things, you know.  My whole life has changed, you

7     know.  I finally found something legitimate to do.  I am doing

8     it now.  I am not working six hours a day, I am actually

9     working seven hours a day.  I wake up in the morning at 6:00.

10    I have an hour and a half travel and sometimes 2 hours into

11    Queens.  I work there from 10:00 to nine or 10:00 at

12    nighttime, and then I come back home.  I have no life.  I am

13    totally committed into working.  I just want to keep on

14    working.  I want to keep providing for my family.  And I want

15    to stay out of jail and stay out of trouble, and I am doing

16    that.

17         THE COURT:  Mr. Sornoza, thank you, sir.

18         THE DEFENDANT:  Thank you.

19         THE COURT:  Let me ask Mr. Patus a question.

20         In the recommendation that is made by the Probation

21    Department and adopted by the government, because of the

22    length of the period of incarceration recommended, there would

23    be no supervised release to follow.  Hypothetically, and this

24    is a hypothetical at this point, if I sentence him to 30

25    months of incarceration how much supervised release could be

1 imposed in addition to that period of incarceration?

2 PROBATION OFFICER: An additional 30 months.

3 THE COURT: I am going to go to the 3553(a) factors,
4 as I am required to do.

5 Firstly, as to the nature of the crime or the
6 offense, it is a violation of supervised release. Basically,
7 what this defendant has done is he has reengaged in the same
8 conduct that brought him here in the first instance.
9 Obviously, whether it is marijuana or otherwise it is a crime
10 which has significant effects upon society.

11 In any event, the crime speaks for itself. Mr.
12 Conway has explained to the extent that there is a reference
13 to 150 pounds of marijuana during this two month span that it
14 is his understanding, Mr. Conway's, that that number is the
15 result of a concerted effort by a number of drug peddlers and
16 not just attributable to Mr. Sornoza. That is the nature of
17 the drugs.

18 As far as the background of this defendant, as
19 indicated, he carries a criminal history category of six. He
20 has crimes extending back to convictions which are set forth
21 on page three under the caption original offense and previous
22 criminal history of the violation of the supervised release
23 report.

24 Among other things, he has a conviction for criminal
25 possession of a weapon, possession of burglar tools, resisting

1  arrest, criminal possession of stolen property, etc.

2          Now since he has been released he has the violations
3  which bring him here today.  Apparently he endeavored to lead
4  a constructive life.  He has established this business.  He
5  works, apparently, seven days a week.  It has been indicated
6  that he provides some support for his wife and he supports
7  three children.

8          As I alluded to earlier one of the problems here is
9  that Mr. Sornoza, not withstanding the fact that he is
10 apparently a fairly bright and industrious individual,
11 jeopardized the future of his business and the support he
12 provides for his children and wife who obviously he loves very
13 much, all of them, by his own action.  Yet the effect it will
14 have on others is certainly something that I will consider.
15 Although that effect is something that the defendant brought
16 about by his own actions.

17         As far as deterrents are concerned there are two
18 aspects of that, specific and general.  As far as specific
19 deterrents are concerned, of course, none of us are
20 clairvoyant.  To some extent what an individual has done in
21 the past provides an indicator of what they were likely to do
22 in the future.  So to the extent that is true, that does not
23 bode well for Mr. Sornoza as far as him sliding back into his
24 criminal ways should times be difficult in the future.

25         For instance, I am told here that one of the reasons

1  that Mr. Sornoza engaged in this drug activity, which is the
2  predicate for the present violations, is that he had a
3  downturn in his business.  So he tried to fill the financial
4  gap by criminal activities.  That was a business decision and
5  not a particularly wise one as it turns out.
6           On generally deterrents people should understand
7  that they are sentenced and placed on supervised release, and
8  if they violate supervised release that is a problem.  That
9  raises the spectra of them facing dire consequences
10 particularly given the history of this defendant thus far.  In
11 any event, I have considered all of the 3553(a) factors, some
12 of which I mentioned here today.
13          I feel that the following sentence is appropriate in
14 this case.  The idea of community, some type of community
15 confinement or home confinement or being placed in some type
16 of halfway facility, in another scenario I would certainly
17 consider that.  Particularly given this very formidable
18 argument made by Mr. Conway.  But each case is unique, and
19 this defendant has a number of unique characteristics, most of
20 which are not positive.  Again, it is a real shame because I
21 think he is a talented and industrious individual.
22          I do feel that some period of supervised release is
23 required here as well.  So what does that mean?  What it
24 means, when all of the dust settles, is that the present
25 period of supervised release is revoked as it must be.

1     The defendant is hereby sentenced to a period of
2 incarceration of 30 months.  That will be followed by 30
3 months of supervised release.
4     The conditions of the supervised release, the
5 special conditions, will mirror those that are presently in
6 effect.
7     Mr. Sornoza, you have an absolute right to appeal
8 this adjudication.  If you are considering doing that I want
9 you to know that, number one, an attorney will be appointed
10 for you free of charge.  There will be no cost to you
11 whatsoever if you cannot afford an attorney.  I am not so sure
12 that is your case.  I want you to understand that if your
13 financial circumstances as they now stand would preclude you
14 from hiring an attorney, one would be appointed for you free
15 of charge.
16     You should also understand that there are very tight
17 time constraints and procedures that you must follow should
18 you elect to appeal.
19     Do you understand what I saying concerning the right
20 to appeal?
21     THE DEFENDANT:  Yes, sir.
22     THE COURT:  Mr. Conway, will you assure me that you
23 will advise your client today or by the end of the week on the
24 issue of appeal and the timeframes he must follow and the
25 procedures he has to follow?

1     MR. CONWAY: Yes. I will, Your Honor.

2     THE COURT: Let me check with the government. Is
3 there anything further we should do on the sentence that we
4 have not done?

5     MR. MISKIEWICZ: No, Your Honor.

6     MR. CONWAY: I have one question, Your Honor.

7     I discussed it coming in here today with both Mr.
8 Miskiewicz and Mr. Patus. That is to allow my client sometime
9 to surrender so we can prepare in terms of his business and
10 the family.

11     THE COURT: I have no problem with that if that is
12 satisfactory with the government.

13     MR. MISKIEWICZ: Yes, Your Honor.

14     MR. CONWAY: Your Honor, I had initially discussed
15 with Mr. Patus and I don't know a specific time with Mr.
16 Miskiewicz, but I have discussed 30 days with Mr. Patus. If
17 it is not objectionable I will ask for 45 days to get him over
18 the holidays, and the whole time to put things in order.

19     THE COURT: Does the government wish to be heard on
20 that?

21     MR. MISKIEWICZ: No objection.

22     THE COURT: So it will be 45 days. That is about
23 when, if you could pick a date. We can have him surrender on
24 April 30th.

25     MR. CONWAY: That is fine, Your Honor.

1     THE COURT: He will surrender to the designated
2 facility by 2:00 p.m. on April 30th, 2015.
3     I am sure Mr. Sornoza understands that if you don't
4 surrender as directed that is another problem. I have no
5 reason to suspect that problem will materialize.
6     Again I feel badly in a way on this case, not
7 because I am uncomfortable with the sentence, but I just feel
8 that Mr. Sornoza -- and I know he had difficulties growing up
9 and so forth. It seems like such a waste of talent. As I
10 said, he put himself in this predicament.
11     He will have to try to benefit as much as he can
12 from this period of incarceration. Although the primary
13 reason it was revoked was that it was abused. He should try
14 to rebuild his life and his family once he is released.
15     Thank you everybody. That conclude the matter, I
16 believe, for today.
17     MR. MISKIEWICZ: Your Honor, we do have one other
18 request.
19     THE COURT: Yes.
20     MR. MISKIEWICZ: If the Court will direct Mr.
21 Sornoza to report to the Marshals downstairs to be processed.
22     THE COURT: That makes sense and Mr. Conway will do
23 that.
24     I also do note, if I didn't do it before, that I
25 think it is implicit that his cooperation with the State

1　authorities is reflected in what is transpired in the State.
2　I considered the totality of the circumstances including that
3　cooperation.  But, again, to the extent he will receive the
4　benefit for that that is through the State rather than here.
5　　　　Thank you everybody.
6　　　　MR. MISKIEWICZ:  Thank you, Your Honor.
7　　　　MR. CONWAY:  Thank you, Your Honor.
8　　　　(Matter concluded.)